# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MINER, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** <u>3:19-cv-00037</u> |
| | § | |
| **PAUL ANGUIANO and PASEO** | § | **JURY TRIAL DEMANDED** |
| **DEL NORTE DOCK PRODUCTS,** | § | |
| **INC.** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Miner, Ltd. ("Miner") hereby files this Complaint for Injunctive Relief and Damages against Defendants Paul Anguiano and Paseo Del Norte Dock Products, Inc. (collectively, "Defendants") and shows the Court as follows:

## PRELIMINARY STATEMENT

Defendant Paul Anguiano, a long-time, high-level salesperson and Management Member of Miner's El Paso branch, is in breach of the restrictive covenants in his employment and membership agreements. Defendant Paseo Del Norte, Anguiano's new employer and a competitor of Miner, wrongfully induced Anguiano's breach and tortuously interfered with Miner's business relationships. This is an action to prohibit the continued breach and put an end to the illegal violation of federal law by both Anguiano and his new company Paseo Del Norte.

## PARTIES

1.   Plaintiff Miner is a national industry leader in the sale, design, management, installation, repair, and maintenance of warehouse and materials management operations equipment. Miner is a Texas company, with its principal place of business at 11827 Tech Com Dr. #115 San Antonio, TX 78233.

2.   Defendant Anguiano is a former owner and an employee of Miner.  He was associated with Miner for over 17 years until January 3, 2017, most recently as an Account Executive.

3.   Upon information and belief, Anguiano resides at 10485 Deepwood Court, El Paso, TX 79952 but frequented the company headquarters in San Antonio, Texas.

4.   Defendant Paseo Del Norte Dock Products, Inc. is Miner's competitor in the warehouse and materials management industry.   Paseo Del Norte is a Texas company which does business throughout Texas and maintains its principal place of business at 12110 Freight Lane, Suite C, El Paso, TX 79936.

## JURISDICTION AND VENUE

5.   Pursuant to 28 U.S.C. §§ 1331 and 1367(a), this Court has subject-matter jurisdiction over this action because this case arises under the federal Defend Trade Secrets Act and the Computer Fraud and Abuse Act and otherwise includes claims so related as to form part of the same case or controversy.

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                        - 2 -

6.   Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this matter, as a substantial part of the events giving rise to this action took place in the Western District of Texas.

## FACTS

### *The Limited Liability Company Agreement of Miner*

7.   Anguiano owned an interest in Miner El Paso, Ltd., which is a subsidiary of Miner, Ltd. ("Miner") prior to June 2012.

8.   Miner is a subsidiary of Material Handling Services ("MHS").

9.   On or about June of 2012, MHS acquired Miner and its subsidiaries, including Miner El Paso.

10. In connection with the MHS's purchase of Miner, in June 2012 a Limited Liability Company Agreement ("LLC Agreement") was executed between various individuals including Anguiano.

11. To retain his ownership interest in Miner, Anguiano executed an LLC Agreement with the MHS, which included restrictive covenants.

12. On December 17, 2012, Anguiano and other Managing Members of Miner amended and restated their Limited Liability Company Agreement.

13. Anguiano executed the Restated Limited Liability Company Agreement ("Amended LLC Agreement") as one of its members on the same day, December 17, 2012.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 3 -

14. In the Amended LLC Agreement, each Management Member entered into certain covenants for the benefit of the Company and its subsidiaries, which "shall survive and continue following the execution of this Agreement" and "shall survive the transfer of Units by Each such Management Member." *See* App. at p. 59 (**Ex. A**, Second Amended and Restated LLC Agreement, Art. XII, p. 53.)

15. Specifically, the Amended LLC Agreement included the following acknowledgment regarding access to confidential and proprietary information, stating:

> Each Management Member acknowledges that (a) he or she has had and will continue to have access to significant confidential and valuable information which can be used unfairly and to the harm of the Company or its Subsidiaries by present or potential competitors engaged in the Business, (b) he or she possesses and will continue to receive valuable confidential information and trade secrets of the Company or its Subsidiaries and exposure to key customers of the Company or its Subsidiaries, (c) he or she has received and shall continue to receive valuable confidential information and trade secrets of the Company or its Subsidiaries with respect to their respective relationships with their suppliers and service providers and that such relationships and the right to purchase and distribute products from any such suppliers or to acquire services from providers are limited and as such constitute valuable assets of the Company and its Subsidiaries, (d) the Company and its Subsidiaries have expended and will continue to expend significant time, efforts and resources in the hiring, training and development of an unusual and extraordinary workforce whose identities and abilities the Management Member would not know or learn of but for his or her relationship with the Company; and (e) he or she is agreeing to the covenants set forth in this Article XII in order to induce the Company to offer such Management Member the opportunity to make an investment in the Company, which is of substantial benefit to the Management Members.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 4 -

*See* App. at p. 59 (**Ex. A**, Art. XII, Section 12.1(a)).

16. The Amended LLC Agreement also included post-employment non-compete

covenants, specifically stating:

> Each Management Member further agrees that, for a period of three (3) years . . . after the cessation or termination of his or her employment or consultancy with the Company or its applicable Subsidiary, whether voluntary or involuntary, with or without cause (the "Non-Compete Period"), **he or she shall not, either directly or indirectly: (i) engage in the Business for such Management Member's own account; (ii) render any services or give advice related to the Business to or for any Person that is engaged or is about to become engaged in the Business; (iii) assist any other Person to engage in any activities competitive with the Business of the Company or any Subsidiary of the Company; or (iv) become, directly or indirectly (and whether or not for compensation), a stockholder, partner, member, manager, employee, contractor, agent or consultant of (or establish any other similar affiliation, relationship or capacity with) any Person that is engaged or is about to become engaged in the Business,** other than passive ownership as a portfolio investment (with no director designation rights or other special governance rights) of no more than five percent (5%) of the outstanding equity securities of any corporation listed on a national securities exchange.

*See* App. at p. 60 (**Ex. A**, Art. XII, Section 12.3(a)) (emphasis added).

17. The Amended LLC Agreement included a post-employment non-solicitation

covenant, specifically stating:

> Without limiting the foregoing, each Management Member further agrees that, for a period of three (3) years . . . after the cessation or termination of his or her employment or consultancy with the Company or its applicable Subsidiary, whether voluntary or involuntary, with or without cause (the "Non-Solicit Period"), **he or she shall not, either directly or indirectly, hire, solicit (or encourage any other Person**

<u>**COMPLAINT FOR INJUNCTIVE RELIEF**</u>
<u>**AND DAMAGES AND DEMAND FOR JURY TRIAL**</u>          - 5 -

**to hire or solicit) or encourage to leave the employment of the Company or any Subsidiary of the Company, any Person, whether full or part-time, who is an officer, employee, contractor or consultant (other than a contractor or consultant who is a third party service provider whose services are generally available)** of, or to, the Company or any Subsidiary of the Company on the date hereof or who has been employed or engaged by the Company or any Subsidiary of the Company within one (1) year prior to the date of such hiring or solicitation.

*See* App. at p. 60 (**Ex. A**, Art. XII, Section 12.3(b)) (emphasis added).

18. The Amended LLC Agreement also included an additional post-employment non-solicitation covenant, specifically stating:

> [E]ach Management Member further agrees that during the Non-Solicit Period, he or she shall not, directly or indirectly, seek to induce or otherwise cause any customer, supplier, vendor, licensee or any other Person with whom the Company or any Subsidiary of the Company then has, or during the twelve (12) months prior to such time had, a business relationship, whether by contract or otherwise, to discontinue or alter in a manner adverse to the Company or any Subsidiary of the Company, such business relationship.

*See* App. at p. 60 (**Ex. A**, Art. XII, Section 12.3(c)).

19. The Amended LLC Agreement also included a "Confidentiality" provision, specifically stating:

> During and following the employment or consultancy of any Management Member, the Management Member shall keep secret and retain in strictest confidence, and will not use for the benefit of himself or others except in connection with the business and affairs of the Company and its Subsidiaries, all confidential matters relating to the Company or its Subsidiaries including "know how," financial information, trade secrets, recipes and formulas, lease or construction terms, consultant contracts, pricing policies, operational methods,

marketing or franchising plans or strategies, product development techniques or plans, business acquisition plans, new personnel acquisition plans, training materials, designs and design projects and other business affairs relating to the Company or its Subsidiaries and will not disclose them to anyone outside of the Company and its Subsidiaries, whether during or after employment by or consultancy with the Company or its Subsidiaries, except (i) as required in the course of performing his or her duties for the Company or its Subsidiaries, (ii) with the Company's express written consent or (iii) to the extent any such confidential matter (A) is in the public domain or is generally known in the industry through no unlawful or wrongful act of the Management Member or (B) must be disclosed by the Management Member pursuant to law and the Management Member's disclosure is limited to that reasonably required by law. All memoranda, notes, lists, records and other documents or papers (and all copies thereof), including such items stored in computer memories, on microfiche or by any other means, made or compiled by or on behalf of the Management Member, or made available to the Management Member concerning the business of the Company or its Subsidiaries, are and will be the Company's property and will be delivered to the Company promptly upon the termination of the Management Member's employment with the Company or its Subsidiaries or at any other time on written request.

*See* App. at p. 61 (**Ex. A,** Art. XII, Section 12.5).

### ***The Non-Competition, Non-Solicitation, and Confidentiality Agreement***

20. Defendant Anguiano was employed as a salesman for Miner or its predecessor companies for over seventeen (17) years.

21. On or about April 29, 2016, Miner promoted Anguiano to the position of Account Executive. As an Account Executive, Anguiano had material contact with Miner's clients throughout the United States and Mexico. Because Anguiano's position required him to have frequent material contact with Miner's clients and

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 7 -

would expose him to Miner's proprietary information, as a condition of his employment, Anguiano executed a Non-Competition, Non-Solicitation, and Confidentiality Agreement, which included restrictive covenants. *See* App. at pp. 112-119 (**Ex. B,** Anguiano Employment Agreement).

22. Pursuant to the non-competition, non-solicitation, and confidentiality provisions part of his Employment Agreement, Anguiano agreed to refrain from performing services for any competing company for a period of three (3) years following the end of his employment with Miner.

23. Specifically, the Employment Agreement's "Non-Compete" provision stated:

> Employee acknowledges that by virtue of his or her respective position with the Company, he or she has developed considerable expertise in the business of the Company. During the Employee's employment with the Company and for a period of three (3) years following the date of the Employee's termination of employment for any reason (the "Non-Competition Period"), **the Employee shall not, without the prior written consent of the Company, and whether as employee, principal, agent, shareholder, partner, consultant, advisor, limited liability company manager or member, director, or otherwise, directly or indirectly, compete anywhere in North America or any other geographic location in which the Company engages in business or has taken active steps towards engaging in business** as of the date of Employee's termination of employment, with the Company or any Affiliate (as defined herein) of the Company in the business of providing repair service, planned maintenance support, sales and installation, equipment modernization, diagnostics and analytics services for truck loading dock equipment, commercial doors, recycling/waste handling equipment, material handling equipment, security and access control solutions, storefront glass systems to customers, and similar equipment and fixtures located at retail, distribution, manufacturing, healthcare and hospitality companies or

<u>**COMPLAINT FOR INJUNCTIVE RELIEF**</u>
<u>**AND DAMAGES AND DEMAND FOR JURY TRIAL**</u>          - 8 -

> providing material handling equipment and fleet management and maintenance services, as conducted by the Company or any Affiliate of the Company, or in any other business activity directly related to the business in which the Company is now involved or becomes involved during the term of Employee's employment (the "Business"), nor will Employee engage in any other activities that conflict with his obligations to the Company.

*See* App. at p. 115 (**Ex. B**, Section 2(a)) (emphasis added).

24. Pursuant to the Employment Agreement, Anguiano also agreed to refrain from soliciting Miner's employees or customers for a period of three (3) years following the end of his employment.

25. Specifically, the Employment Agreement's "Non-Solicitation of Employees or Customers" provision stated:

> During the Non-Competition Period, Employee **will not, directly or indirectly, (i) recruit, provide services to, engage the services of, or otherwise solicit or induce any person, who Is or who has been, within two years prior to that time, an employee, customer, contractor, subcontractor, independent consultant, sales representative or supplier of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, to terminate its employment or arrangement with the Company** or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, otherwise change its relationship with the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, or establish any relationship with the Employee or any of his or her affiliates to compete with the Company or any of its affiliates in the Business or (ii) without the Company's prior written consent, hire or engage the services of (at any employee of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company or (b) any person who has been, within two years prior to that time, an employee of the Company or any of its

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 9 -

affiliates that owns, directly or indirectly, any of the assets of the Company.

*See* App. at pp. 115-116 (**Ex. B,** Section 2(b)) (emphasis added).

26. The Employment Agreement also included a "Confidentiality" provision, stating that:

> Employee shall, in perpetuity, maintain in confidence and **shall not directly, indirectly or otherwise, use, disseminate, disclose or publish, or use for his benefit or the benefit of any person, firm, corporation or other entity any confidential or proprietary information or trade secrets of or relating to the Company, including, without limitation, information with respect to the Company's operations, processes, products, inventions, business practices, finances, principals, vendors, suppliers, customers, potential customers, marketing methods, costs, prices, contractual relationships, regulatory status, compensation paid to employees or other terms of employment, or deliver to any person, firm, corporation or other entity any document, record, notebook, computer program or similar repository of or containing any such confidential or proprietary information or trade secrets.** Employee shall not be considered to violate this confidentiality covenant as a result of information required to be provided to current or potential customers, suppliers or other third parties strictly in the ordinary course of business. The parties hereby stipulate and agree that as between them the foregoing matters are important, material and confidential proprietary information and trade secrets and affect the successful conduct of the businesses of the Company (and any successor or assignee of the Company).

*See* App. at p. 116 (**Ex. B,** Section 2(d)) (emphasis added).

27. Pursuant to the Employment Agreement, the "Non-Competition Period shall be tolled during (and shall be deemed automatically extended by) any period in

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                                      - 10 -

which the Employee is in violation [of] this Section 2(a) and (b)." *See* App. at p. 116

(**Ex. B,** Section 2(c)).

28. The Employment Agreement establishes that Miner is entitled to an injunction

to prevent further breaches, specifically stating:

> It is recognized and acknowledged by the Employee that **a breach of any of the covenants contained in this Agreement will cause irreparable damage to the Company and its goodwill**, the exact amount of which will be difficult or impossible to ascertain, and that the remedies at law for any such breach will be inadequate. Accordingly, the Employee agrees that in the event of a breach of any of the covenants contained in this Agreement, in addition to any other remedy which may be available at law or in equity, the Company will be entitled to specific performance and injunctive relief.

*See* App. at p. 116 (**Ex. B,** Section 3) (emphasis added).

### *Anguiano's Separation and Release Agreement*

29. On December 27, 2016, Anguiano executed a Separation and Release

Agreement. Anguiano's separation was effective as of January 3, 2017. *See* App. at

pp. 120-124 (**Ex. C,** Separation Agreement).

30. In the Separation and Release Agreement, Anguiano acknowledged and

agreed that he had:

> [R]eturned, or will return on the Effective Date (1/1/17), all Company property, including without limitation, copies of Confidential Information (as defined below), in your possession, custody and control. Such property includes, without limitation, handwritten, typed, printed, photocopied, audio recorded, computer or diskette recorded materials prepared by you or any consultant, attorney, agent or

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 11 -

Company employee, officer or director which relate in any way to the Company.

*See* App. at p. 122 (**Ex. C,** Section 4).

31.  In the Separation and Release Agreement, Anguiano also "acknowledge[d] and reaffirm[ed] the requirements and restrictive covenants that you are subject to pursuant to that certain Non-Competition, Non-Solicitation and Confidentiality Agreement between you and the Company that was executed on or about April 29, 2016." *See* App. at p. 123 (**Ex. C,** Section 8).

32.The Separation and Release Agreement included a choice of law stating that the "Agreement and the obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of Texas." *See* App. at p. 123 (**Ex. C,** Section 9).

### *Violations of Anguiano's Agreements*

33.In his capacity as a longstanding high-level employee, Account Executive, and Managing Member of Miner, Anguiano had access to customer lists containing sales and other protectable information such as key contacts.

34.Plaintiff recently discovered that Anguiano "wiped" his company cell phone and "wiped" his laptop on the day he left.

35.Since the termination of his employment with Miner, Anguiano has gone to work for its competitor, Paseo Del Norte.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 12 -

36. Paseo Del Norte competes directly with Miner because Paseo Del Norte also designs, sells, distributes, and manufactures material movement equipment and accessories.

37. Upon information and belief, Anguiano has used Miner's customer list clients and relationships to directly compete with Miner.

38. Upon information and belief, Anguiano coordinated and worked in concert with Paseo Del Norte while still employed with Miner to become a partner in Paseo Del Norte's business.

39. Moreover, Anguiano solicited Miner employees to join him in his new endeavor with Paseo Del Norte both before and after his employment for Miner. For example, Anguiano enticed Eduardo Casas, a former Miner employee with whom Anguiano had material contact while at Miner, to come work for him at Paseo Del Norte.

40. Anguiano has violated his obligations under the non-solicitation, non-compete, and confidentiality agreements in his new capacity with Paseo Del Norte.

41. Anguiano has solicited on behalf of Paseo Del Norte clients with whom he had material contact while employed for Miner. For example, on August 29, 2018, a client with whom Anguiano had material contact while working with Miner apparently inadvertently sent an email to Miner, copied to Anguiano at his Paseo Del Norte email address, asking for a quote on a project. *See* App. at pp. 125-127

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                          - 13 -

(**Ex. D,** Email from Alfonso Ortiz to Rick Velasco). This client represents approximately $1 million of business for Miner.

42.Recently, Miner learned that Anguiano is soliciting and submitting bids to over thirty (30) Miner clients, directly in competition with Miner.

43.In Anguiano's capacity as a Managing Member of the Amended LLC, he was exposed to Miner's financial information, pricing policies, operational methods, marketing strategies, and other business affairs.

44.Anguiano has misappropriated Miner's proprietary information, including highly valuable "know how," including but not limited to financial information, trade secrets, pricing policies, pricing discounts, operational methods, marketing plans and/or strategies, product development techniques or plans, designs and design projects and other business affairs.

### *Miner's Efforts to Stem Anguiano's Illegal Conduct*

45.Recently when Miner became aware that Anguiano was working for Paseo Del Norte in violation of his non-compete agreements, Miner sent Anguiano a letter on 1/10/2019 demanding that he cease and desist from violating his agreements. *See* App. at pp. 129-140 (**Ex. E,** Cease & Desist Ltr. to Anguiano, 1/10/2019).

46.Shortly thereafter, counsel for Anguiano and PDN responded via email and made clear that both Anguiano and PDN intended to ignore the enforceability of

Anguiano's Agreements. *See* App. at pp. 141-143 (**Ex. F,** Email from PDN to M. Robinson, 1/11/2019).

### *The Present Action*

47. This action was filed to stop Anguiano's and Paseo del Norte's illegal actions in violation of federal law and Anguiano's agreements with Miner, but also federal law, as explained in detail also in the attached Application for Temporary Restraining Order and Preliminary Injunction, also filed today with the Court.

48. Plaintiff seeks an order requiring Anguiano to return all trade secrets and confidential information retained as a result of Anguiano's breach of his Agreements.

49. Miner is further entitled to an order from this Court permanently restraining Defendants for the duration of the Agreements' applicable restrictive time periods from (1) soliciting Miner's prospective and existing client with whom they had material contact while employed by Miner; (2) soliciting Miner's employees; and (3) using Miner's Proprietary Information, including its trade secrets, in competition with Miner's business. The agreements' applicable restrictive time periods should be tolled so that they commence on the first day following the complete cessation of Anguiano's breaches of the Agreements.

50. Unless a preliminary injunction is issued, the threatened injury to Miner outweighs whatever damages the proposed order and injunction may cause

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**          - 15 -

Anguiano or Paseo Del Norte considering Miner anticipates that absent Court action, it stands to potentially lose over $6.2 million in revenue per year and its client list containing approximately 30 contacts or more at least. *See* App. at pp. 144-147 (**Ex. G,** Declaration of Rick Velasco).

51. There is substantial likelihood that Miner will prevail on the merits of the underlying claims and/or that this case presents serious issues on the merits which should be the subject of further litigation.

52. Based on the foregoing wrongful conduct by Anguiano and PDN—which was knowing, willful, intentional, reckless and/or grossly negligent—Miner is entitled to an award of compensatory damages, punitive damages, attorney fees, and costs, and injunctive relief.

**COUNT I**
**Breach of Limited Liability Company Agreement: Non-Solicitation of Clients**
**(Anguiano)**

53. Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

54. The Amended LLC Agreement is a valid and binding contract supported by good and valuable consideration. Specifically, Anguiano entered into the LLC Agreement in exchange for an ownership interest in the new entity.

55. Pursuant to the Amended LLC Agreement, Anguiano is prohibited from soliciting any Miner customer, supplier, vendor, licensee or any other person with whom Plaintiff had a business relationship in the 12 months prior to his termination.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                                   - 16 -

56. Upon information and belief, Anguiano has solicited Miner's clients on behalf of Paseo Del Norte, in violation of the Restated Agreement. Specifically, Anguiano has solicited business from at least 12 businesses with whom he had material contacts while working for Miner and is in possession of client lists for at least 30 or more clients.

57. The Amended LLC Agreement, including the non-solicitation and non-competition provisions contained therein, are valid and enforceable agreements under Texas law.

58. The non-solicitation and non-competition provisions are reasonably calculated to protect Miner's legitimate business interests, which include, but are not limited to, Miner's proprietary information and relationships with its customers.

59. Anguiano's actions breach the Amended LLC Agreement.

60. As a direct and proximate result of Anguiano's breaches of the LLC Agreement, Miner has suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not fully capable of ascertainment at this time. Plaintiff has suffered damages in an amount to be determined at trial. At the very least, Anguiano has actively pursued between one million and two million dollars of business from Miner.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**

## COUNT II
### Breach of Limited Liability Company Agreement: Non-Solicitation of Employees

61. Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

62. The Amended LLC Agreement is a valid and binding contract supported by good and valuable consideration. Specifically, Anguiano entered into the Amended LLC Agreement in exchange for an ownership interest in the new entity.

63. Pursuant to the Amended LLC Agreement, Anguiano is prohibited from soliciting any Miner employee for a period of three (3) years following his termination.

64. Anguiano's employment was terminated on January 3, 2017. As a result, Anguiano is prohibited from soliciting Miner's employees until January 3, 2020 plus the tolling period of this litigation.

65. Anguiano has solicited Miner's employees on behalf of Paseo Del Norte within the non-solicitation period, in violation of the LLC Agreement.

66. The Amended LLC Agreement, including the non-solicitation and non-competition provisions contained therein, are valid and enforceable agreements under Texas law.

67. The non-solicitation and non-competition provisions are reasonably calculated to protect Miner's legitimate business interests, which include, but are not

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 18 -

limited to, Miner's proprietary information and relationships with its employees and customers.

68. Anguiano's actions, including those described above, constituted breaches of the LLC Agreement.

69. As a direct and proximate result of Anguiano's breaches of the LLC Agreement's Non-Solicitation provision, Plaintiff has suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not capable of ascertainment at this time. In addition, or in the alternative, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT III
### Breach of Limited Liability Company Agreement: Non-Disclosure of Proprietary Information (Including Trade Secrets) (Anguiano)

70. Miner incorporates Paragraphs 1 through 52 as if fully stated herein.

71. The Amended LLC Agreement is a valid and binding contract supported by good and valuable consideration.

72. Pursuant to the confidentiality provision of the Amended LLC Agreement, Anguiano is prohibited from improperly disclosing or using Miner's proprietary information, including its trade secrets.

73. Upon information and belief, Anguiano has improperly disclosed and/or used Miner's propriety information—including its trade secrets—on behalf of Paseo Del

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 19 -

Norte, in violation of his Agreement. For example, Anguiano has used and disclosed to Paseo Del Norte client lists and client information he obtained from Miner.

74. The LLC Agreement, including the confidentiality provision contained therein, are valid and enforceable agreements under Texas law.

75. The confidentiality provision is reasonably calculated to protect Miner's legitimate business interests, which include, but are not limited to, Miner's proprietary information, including trade secrets.

76. Anguiano's actions, including those described above, constituted breaches of the Amended LLC Agreement.

77. As a direct and proximate result of Anguiano's breaches of the Amended LLC Agreement, Plaintiff has suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not capable of ascertainment at this time. In addition, or in the alternative, Plaintiff has suffered damages in an amount to be determined at trial.

## <u>COUNT IV</u>
### **Breach of Employment Contract: Non-Solicitation of Clients (Anguiano)**

78. Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

79. The Non-Competition, Non-Solicitation, and Confidentiality Agreement is a valid and binding contract supported by good and valuable consideration. Plaintiff

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 20 -

has performed all obligations necessary in order to demand performance by Anguiano.

80. Pursuant to the Non-Competition, Non-Solicitation, and Confidentiality Agreement, Anguiano is prohibited from soliciting any Miner customer, supplier, vendor, licensee or any other person with whom Plaintiff had a business relationship in the twelve (12) months prior to his termination.

81. Anguiano has solicited Miner's clients on behalf of Paseo Del Norte, in violation of the Non-Competition, Non-Solicitation, and Confidentiality Agreement.

82. The Non-Competition, Non-Solicitation, and Confidentiality Agreement, including the non-solicitation and non-competition provisions contained therein, are valid and enforceable agreements under Texas law.

83. The non-solicitation and non-competition provisions are reasonably calculated to protect Miner's legitimate business interests, which include, but are not limited to, Miner's proprietary information and relationships with clients.

84. Anguiano's actions, including those described above, constituted breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement.

85. As a direct and proximate result of Anguiano's breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement Miner has suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not capable of ascertainment at this time. In addition, or in

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                 - 21 -

the alternative, Plaintiff has suffered damages in an amount to be determined at trial. At the very least, Anguiano has actively pursued between one and two million dollars of business of Miner.

## COUNT V
### Breach of Employment Contract: Non-Solicitation of Employees
### (Anguiano)

86. Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

87. The Non-Competition, Non-Solicitation, and Confidentiality Agreement is a valid and binding contract supported by good and valuable consideration. Plaintiff has performed all obligations necessary to demand performance by Anguiano.

88. Pursuant to the Non-Competition, Non-Solicitation, and Confidentiality Agreement, Anguiano is prohibited from soliciting any Miner employee for a period of three (3) years following his termination.

89. Anguiano's employment was terminated on January 3, 2017. As a result, Anguiano is prohibited from soliciting Miner and MHS employees until January 3, 2020 plus the tolling period.

90. Anguiano has solicited Miner's employees on behalf of Paseo Del Norte with the non-solicitation period, in violation of the Non-Competition, Non-Solicitation, and Confidentiality Agreement.

91. The Non-Competition, Non-Solicitation, and Confidentiality Agreement, including the non-solicitation and non-competition provisions contained therein, are valid and enforceable agreements under Texas law.

92. The non-solicitation and non-competition provisions are reasonably calculated to protect Miner's legitimate business interests, which include, but are not limited to, Miner's proprietary information and relationships with its employees.

93. Anguiano's actions, including those described above, constituted breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement.

94. As a direct and proximate result of Anguiano's breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement Plaintiff has suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not capable of ascertainment at this time. In addition, or in the alternative, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VI
### Breach of Employment Contract: Non-Disclosure of Proprietary Information (Including Trade Secrets)
### (Anguiano and Paseo Del Norte)

95. Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

96. The Non-Competition, Non-Solicitation, and Confidentiality Agreement is a valid and binding contract supported by good and valuable consideration. Plaintiff

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 23 -

has performed all obligations necessary in order to demand performance by Anguiano.

97. Pursuant to the confidentiality provision of the Non-Competition, Non-Solicitation, and Confidentiality Agreement, Anguiano is prohibited from improperly disclosing or using Miner's proprietary information, including its trade secrets.

98. Anguiano has improperly disclosed and/or used Miner's propriety information—including its trade secrets—on behalf of Paseo Del Norte, in violation of his Agreement. For example, Anguiano has used and disclosed to Paseo Del Norte client lists and client information he obtained from Plaintiff.

99. The Non-Competition, Non-Solicitation, and Confidentiality Agreement, including the confidentiality provision contained therein, are valid and enforceable agreements under Texas law.

100.    The confidentiality provision is reasonably calculated to protect Miner's legitimate business interests, which include, but are not limited to, Miner's proprietary information, including trade secrets.

101.    Anguiano's actions, including those described above, constituted breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement.

102.    As a direct and proximate result of Anguiano's breaches of the Non-Competition, Non-Solicitation, and Confidentiality Agreement, Plaintiff has

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**            - 24 -

suffered and continues to suffer great and irreparable harm. The damages are considerable and continuing and thus not capable of ascertainment at this time. In addition, or in the alternative, Miner has suffered damages in an amount to be determined at trial.

## COUNT VII
### Tortious Interference with Contract
### (Anguiano and Paseo Del Norte)

103.    Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

104.    Anguiano has solicited and continues to solicit one or more of Miner's existing customers with whom he had contact while employed by Miner, with the intent to cause such customers to cease or materially reduce their business relationships with Miner and instead do business with Paseo Del Norte.

105.    As a result of Anguiano's interference, Plaintiff has already been damaged and expects further damage.

106.    When Anguiano, on behalf of Paseo Del Norte, solicited Miner's existing customers with whom he had material contact while employed by Miner, he had knowledge of the relationship between Miner and its existing customer base.

107.    When Anguiano, on behalf of Paseo Del Norte, solicited Miner's customers with whom he had material contact while employed by Miner, he had knowledge of Miner's expectation of economic benefit from those customers.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                      - 25 -

108.     Likewise, even after putting Paseo Del Norte on notice of Anguiano's Non-Competition, Non-Solicitation, and Confidentiality Agreement, Paseo Del Norte decided to continue employing Anguiano.

109.     But for the intentional and unlawful interference by Anguiano and Paseo Del Norte, Miner would have received the economic benefit of its continued relationship with its existing customers.

110.     The wrongful conduct of Anguiano and Paseo Del Norte was knowing, willful, intentional, malicious, reckless or grossly negligent.

111.     Plaintiff has suffered and will continue to suffer immediate and irreparable harm as a result of the conduct of Anguiano and Paseo Del Norte.

**COUNT VIII**
**Misappropriation of Trade Secrets: Defend Trade Secrets Act**
**(Anguiano and Paseo Del Norte)**

112.     Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

113.     During his employment for Miner, Anguiano had access to and did access Miner's confidential and proprietary information, including but not limited to its client lists, which include clients' order histories and sales preferences, pricing discounts, and pricing policies. This confidential and proprietary information constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

114.     In his capacity as a Managing Member of Miner, Anguiano had access to and did access Miner's confidential and proprietary information, including but not

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 26 -

limited to financial and business information. This confidential and proprietary information also constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

115.    Plaintiff exerts substantial efforts to keep their client lists and financial information secret.

116.    Plaintiff derives economic value from such secrecy by depriving competitors like Paseo Del Norte of opportunities to use Miner's trade secrets to gain competitive advantage.

117.    Since leaving Miner, however, Anguiano has misappropriated Miner's trade secrets within the meaning of 18 U.S.C. § 1839(5) by using the trade secrets and using them in conjunction with his work at Paseo del Norte.

118.    Anguiano's misappropriation of Miner's trade secrets entitles Plaintiff to immediate injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

119.    At all material times, Anguiano and Paseo Del Norte have acted willfully, maliciously, and in bad faith.

120.    As a result of Anguiano and Paseo Del Norte's misappropriation, Plaintiff will suffer irreparable harm.

## COUNT IX
**Misappropriation of Trade Secrets: Texas Uniform Trade Secrets Act
(Anguiano and Paseo Del Norte)**

121.    Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 27 -

122.    During his employment for Miner, Anguiano had access to and did access Miner's confidential and proprietary information, including but not limited to its client lists, which include clients' order histories and sales preferences, pricing discounts, and pricing policies. This confidential and proprietary information constitutes trade secrets with the meaning of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem.§ 134A.002(6).

123.    In his capacity as a Managing Member of Miner, Anguiano had access to and did access Miner's confidential and proprietary information, including but not limited to financial and business information. This confidential and proprietary information constitutes trade secrets with the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(6).

124.    Anguiano and Paseo Del Norte benefited from and have used Plaintiff confidential and proprietary information, including business not limited to financial and business information. At all times, both Anguiano and Paseo Del Norte understood this was Miner's confidential and proprietary information.

125.    Plaintiff exerts substantial efforts to keep its client lists and financial information secret.

126.    Plaintiff derives economic value from such secrecy by depriving competitors like Paseo Del Norte of opportunities to use Miner's trade secrets to gain competitive advantage.

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                                - 28 -

127.     Since leaving Miner, however, Anguiano has misappropriated Miner's trade secrets within the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(3) and used them in conjunction with his work at Paseo del Norte.

128.     Anguiano's misappropriation of Miner's trade secrets entitles Miner to immediate injunctive relief and damages, pursuant to Tex. Civ. Prac. & Rem.§ 134A.003(c).

129.     At all material times, Anguiano and Paseo Del Norte have acted willfully, maliciously, and in bad faith.

130.     As a result of Anguiano and Paseo Del Norte's misappropriation, Miner will suffer irreparable harm.

### COUNT X
### Violation of the Computer Fraud and Abuse Act
### (Anguiano)

131.     Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

132.     Anguiano knowingly and intentionally accessed Miner's computer systems without authorization and/or in excess of his authorization to obtain information from a protected computer used in interstate commerce with the intent of harming Miner.

133.     Anguiano's use of Miner's computer system for a purpose unrelated to his business for Miner prior to the end of his employment, and the authorized use of data from Miner's computer system prior to and after the end of his employment

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 29 -

with Miner, constituted an unauthorized access of Miner's computer systems and computer resources in violation of Miner's Computer Use Policy.

134.    Upon information and belief, the information Anguiano obtained from the above-alleged acts and conduct included confidential and proprietary information, including but not limited to Miner's client lists and business and financial information. This information is extremely valuable to Miner, and its use allows Paseo Del Norte an unlawful advantage in their efforts to compete with Miner.

135.    Anguiano and Paseo Del Norte have benefited from Anguiano's unauthorized access of Miner's computer systems.

136.    As a direct and proximate cause of the unauthorized access, Plaintiff has suffered in excess of $5,000 in damages and irreparable harm.

137.    Plaintiff has suffered further consequential damages from the unauthorized access.

138.    As a result, Plaintiff continues to suffer immediate and irreparable harm. Plaintiff lacks an adequate remedy at law, and unless enjoined by the Court, Anguiano and Paseo Del Norte will continue to cause irreparable injury to Plaintiff.

## COUNT XI
### Breach of Fiduciary Duty
### (Anguiano)

139.     Plaintiff incorporates Paragraphs 1 through 52 as if fully stated herein.

140.     As a Managing Member of Miner, Anguiano owed a fiduciary duty to both Miner and its subsidiaries.

141.     In addition, as a high-ranking Account Executive, Anguiano owed Miner a fiduciary duty.

142.     In connection was his fiduciary duties, Anguiano owed Miner a duty to avoid acting contrary to Miner's interests.

143.     Anguiano also owed Miner a duty not to divulge, disclose, expose, or misuse Miner's proprietary information.

144.     Nonetheless, Anguiano breached his fiduciary duties to Miner by soliciting Miner's clients and employees on behalf of Paseo Del Norte and misappropriating Miner's proprietary information including trade secrets on behalf of Paseo Del Norte.

145.     As a direct and proximate result of Anguiano's willful breach of his fiduciary duties to Miner, Miner has suffered and will continue to suffer damages in the form of lost business, lost revenue, lost goodwill, and other immeasurable and irreparable injuries.

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 31 -

## PRAYER FOR RELIEF

WHEREFORE, Miner has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest, Miner respectfully requests that the Court enter judgment against Paul Anguiano and Paseo Del Norte Dock Products, Inc. (collectively, "Defendants"):

1.      Enjoining Anguiano from breaching the Agreements with Miner and his fiduciary duties to Miner, and misappropriating Miner's trade secrets;

2.      Awarding Plaintiff a temporary and permanent injunction to enforcing the non-competition, non-solicitation, and confidentiality provisions of the Amended LLC Agreement and Anguiano's Employment Agreement, including equitably tolling the provisions for the period of Anguiano's violations;

3.      Requiring Anguiano and Paseo Del Norte to return to Plaintiff any and all of Miner's trade secrets in their custody and control;

4.      Enjoining Paseo Del Norte from tortiously interfering with and/or conspiring with Anguiano to breach his Agreements and fiduciary duties to Miner and misappropriating Miner's trade secrets;

5.      Awarding Miner all damages from the violations outlined above;

6.      Awarding Miner its attorneys' fees and costs; and

7.      Awarding Miner all other relief to which it may be justly entitled.

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                     - 32 -

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted this 29th day of January, 2019.

/s/ Shira R. Yoshor
Shira R. Yoshor
SBN:00788730
yoshors@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: 713.374.3613
Facsimile: 713.374.3505

David W. Long-Daniels*
Georgia Bar No. 141916
long-danielsd@gtlaw.com
Mitchell A. Robinson*
Georgia Bar No. 457655
robinsonma@gtlaw.com
Joshua Y. Joel*
Georgia Bar No. 230547
joelj@gtlaw.com
*pro hac vice admission pending

**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212

*Attorneys for Plaintiff Miner, Ltd.*

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND DEMAND FOR JURY TRIAL**                    - 33 -

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MINER, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **PAUL ANGUIANO and PASEO** | § | **JURY TRIAL DEMANDED** |
| **DEL NORTE DOCK PRODUCTS,** | § | |
| **INC.** | § | |
| | § | |
| **Defendants.** | § | |

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1C</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1C.


*/s/ Shira R. Yoshor*_____
Shira R. Yoshor

<u>**COMPLAINT FOR INJUNCTIVE RELIEF**</u>
<u>**AND DAMAGES AND DEMAND FOR JURY TRIAL**</u>                          - 34 -